ALEXANDER CARLILE ET AL. v. JOHN P. LAMB.

1. ATTEMPTED ALTERATION OF A NOTE, TO MAKE IT NEGOTIABLE, DOES NOT INVALIDATE, WHEN.

An attempted alteration of a non-negotiable note by insertion of the words "or *oder*," thus clumsily done, and inserted in the wrong place, does not make the instrument negotiable, and is not, therefore, such an alteration as renders the note invalid.

2. AND WHEN ENFORCED BETWEEN ORIGINAL PARTIES IS AS IF NO ATTEMPT TO ALTER HAD BEEN MADE.

And where such note, never having been negotiated, is sought to be enforced between the original parties, it is as if there had never been any attempt to change it.

DOUGLASS, J. (orally.)

In August, 1891, the plaintiff below, defendant in error here, being the owner of a stock of groceries, in Newark, Ohio, desired to sell the same. Alexander Carlile desired to purchase a part thereof to start his sons in business. The plaintiff sold this stock of goods, two-thirds to Alexander Carlile and one-third to Homer Brickle. They entered into a written contract, in which the defendants agreed, among other things, to deliver the plaintiff their note in part payment of the interest so purchased by the Carliles for their minor sons. The plaintiff transferred this stock to the defendants, and the defendants executed and delivered to the plaintiff their promissory note, dated August 10, 1891, by which they promised to pay to plaintiff or order the sum of $424.60, with interest at six per cent. The plaintiff then sets out certain endorsements of this note, by which it is shown that the note finally reached the original payee. He says that no payments have been made, and asks judgment for $424.60 with interest from the date of the note.

The defendant admits the ownership of the stock of goods; says that the sons agreed to purchase two-thirds thereof and Brickel the other one-third; that certain sale notes that he owned were endorsed in payment, and that he delivered to the plaintiff his non-negotiable note for the sum of $424.60, and denies each and every other allegation. He says that if the note mentioned in the petition was executed by him, it was fraudulently changed and altered, without the knowledge and consent of the defendant, and after the note was signed by him.

That is the substance of the issue. On the trial it was narrowed to a contention upon the note, the only controversy or defense being this alteration. That is, that the note was given, and as to the consideration, no question was made; but the fact of the alteration is the defense which it is said ought to defeat this note. On this issue, surrounded by the facts existing at the time that the same was executed and delivered, the case was tried, but restricted wholly to that contention.

In the record, we have a copy of this contract which led up to the execution of this note: "Newark, O., August 3rd, 1891. We, the undersigned, do agree to buy of J. P. Lamb, his stock of groceries and fixtures, three wagons, four horses, three sets of harness, and all store fixtures except money-register and ice-boxes, and to take them at invoice

Carlile et al. v. Lamb.

price, to be invoiced by two uninterested men and to be paid for by good notes with good security, to come due on or before one year after date, to be invoiced August 10, 1891." Signed by these two sons and Homer Brickel; witnessed by the parents of the two minor sons and J. P. Lamb.

On page 11 of the record we have the note in suit: "Newark, Ohio, August 10, 1891. On or before August 11, 1892, we or either of us, promise to pay to or "oder" John P. Lamb the sum of four hundred and twenty-four dollars and sixty cents, with interest at six per cent. Signed "A. Carlile, Elizabeth Carlile," as makers of this note, according to this agreement on behalf of the minor sons; but, it was their note.

There are many exceptions to the admission and exclusion of evidence, and to the refusal of the court to charge as requested, and to the charge as given by the court; but all of these follow from the wide variance between the parties as to the theory of this case and the law applicable to it. As I said before, the only issue that is made— that is, that is tried here, and that the court submits to the jury (I will speak of the first, second and third defenses later) is the alteration of the note. Written requests to charge are asked to be given, which are refused, except as given in the general charge; but, specifically, all are refused. Exceptions are taken to the charge in all of its parts and every paragraph. The contention, as we think, narrows itself down to the question indicated: What constitutes an alteration that will invalidate a note? The court charged upon this proposition fully; and we think that this is a case that involves some doubt because it is certain that if this change was made after the note had left the hands of one of the makers, Elizabeth Carlile, without her knowledge or consent, and with the knowledge of the payee, that under ordinary circumstances would be a material alteration, and a good defense, for the reason that it changes the contract made by Elizabeth Carlile without her consent, and it materially changes it because it broadens the contract. In the case of a negotiable promissory note, the note can get into the hands of other parties; the proof may become more difficult, and there are many reasons that can be assigned that causes this to be a different contract than the restricted promissory note, payable to the party named therein.

It is said that the evidence shows that the husband, Alexander Carlile, was the agent of Mrs. Carlile. There is some evidence tending to show this; but we are not going to decide this case upon that point, and I will pass it; and we will come to the very point that is essential here. As a matter of course, a note can be altered before its execution with the consent of the parties, and it would not vitiate the note. After its execution, it could be changed, if the parties assented thereto, as we well know. But if the note, as I have said, were materially changed, after it had been signed by the makers, or by makers and surety, and had left their lands, and, without their consent or assent, with the knowledge or privity of the payee, then that would be a change that would invalidate the note, if material. The Supreme Court makes the distinction that, if done by a stranger, it would be a spoliation of the note and could be enforced as the original contract. Some opinions go that far, but it would be a spoliation of the note, as distinguished from an alteration.

We have a number of authorities cited here. In Jones v. Bangs, 40 O. S., 139, the note sued on was a complete note, and "with ten per cent. interest from date" was added. The court held that that was a material alteration, of course, because it was not the contract which was signed by

the party; that it broadened his obligation and required him to pay $1,060, in that case instead of $1,000. "Where a complete note, payable at a future day and containing no stipulation as to interest, is altered by the principal maker without the knowledge of his surety, before its delivery, by the addition of the words 'with ten per cent. interest from date.' Held: That such alteration is material and makes the note void as against the surety, although the same is made without the knowledge of the payee." The court charged in the case of Jones v. Bangs, *supra*. "As to the first defense to each note, the burden is upon the defendant to maintain this defense by a fair preponderance of the evidence, and in order to make out this defense the proof must satisfy you of two things:

"1. That the note, in each case, was altered by the insertion of the clause as to interest, after it had been signed by the defendant Jones, and without his consent.

"2. That it was so altered with the knowledge, consent or procurement of the plaintiff. For if the note (either of them) was altered before its delivery to the plaintiff without her knowledge or consent, such alteration will not affect its validity in her hands."

The court, making reference to this, says: "Tho only questions to be decided arise upon this charge. As applied to the note under consideration, the charge is to the effect that a material alteration of a complete note, made by the principal maker, before delivery and without the knowledge of the surety, does not discharge the surety, unless such alteration was made with the knowledge, consent or procurement of the payee. We think the charge is manifestly erroneous." The court, coming to the consideration of this, says: "The alteration was certainly material. When it was signed by the surety the note bore no interest before maturity, and was for the payment of $1,000, and no more when due." That is so apparent that we need not read it; because that was a material alteration. "By the subsequent alteration its identity was lost, and there arose another and distinct obligation which he had not signed. To hold him bound by the new contract he must, in some way consistently with legal principles, be concluded by the act of his principal or other person in making the alteration."

The court in discussing Fullerton v. Sturges, 4 O. S., 530, says: "The case of Fullerton v. Sturges, is confidently relied on by the defendant in error, as sustaining the position that the participation of the payee in a material alteration, before delivery, is necessary to avoid the note as to a surety who had no knowledge of, and had given no authority to make the alteration. As we understand that case, the alteration consisted in affixing a seal to the name of the surety before delivery and was wholly immaterial. Therefore, all that was said by the eminent judge who delivered the opinion on the law relating to a material alteration, is *obiter*." The affixing of the seal was held to be wholly immaterial; that is, it was a change in the note, but it was an immaterial change, and it was enforced as an unsealed instrument.

Franklin v. Baker, 48 O. S., 296, fixes the burden of proof. That is not in contention. In Patterson v. McNeeley, 16 OI. S., 348, third paragraph of the syllabus reads as follows: "Where such note has been signed by a surety, and was subsequently, without the knowledge or consent of the surety, so altered before delivery, the payee being privy to such alteration at the time of delivery, and knowing that the surety had not assented thereto: Held, that no action can be maintained against the surety, upon such altered note." The note read "ten per cent. interest

annually." The word "paid" was inserted before the word "annually," and it was held to be a material alteration, for the reason that it called for interest to be paid upon the interest, and therefore broadened the obligation and made it greater.

I will refer to the Newman v. King, 54 O. S., 273: "The date borne by a promissory note is a material part thereof; and if the payee, without the knowledge or consent of the maker, alter its date after the note has been delivered to him, such act renders the instrument void even in the hands of an innocent indorsee for value." This is quite a strong case. The date of the note was changed from June 22, of a given year to June 23, and the court holds that that is a material alteration of the note, and gives as a reason that it would affect the statute of limitations, and that the time is lengthened as well; that a change in one day would be, in principle, the same as a month; and the court backs itself upon the ground that it would be changing the rights of the parties and their liability.

What are the facts about this case, as the authorities measure them? We have here a promissory note that was written without any words of negotiability. After the note had been signed by Alexander Carlile and Elizabeth Carlile, the makers, Alexander Carlile went to the place where Mr. Lamb was, and there Mr. Lamb made objection to the note in its then form, as it did not conform to the original contract that called for good notes. At the suggestion of some of the parties, or by their agreement, the words "or order" were attempted to be inserted; they were inserted at the wrong place, and spelled "or o-d-e-r." As I have said before, if a note was altered from a non-negotiable instrument to a negotiable instrument, by inserting the words "or order," that, *per se*, would be a material alteration; and if made under the conditions that I have a number of times stated, would be a defense. This was tried between the original parties to the note; and, as a matter of fact and in essence, as tried, the note is simply as if there had never been any attempt to change it; because it is sought to be enforced between the original parties to the note. We think that the words "or o-d-e-r," written where they were in the note, was not such a change in the note as made it negotiable; that it would not, in the hands of any party taking it, cut off equities; because the very form of it, the blundering manner in which it was done, would be notice to the parties, and would not cut off equities or enlarge the contract as between the parties. That is the first consideration. A second: If we look through the form to the substance, this contract was simply enforced exactly as if no alteration had been made, and just as it was when it was signed by Mrs. Carlile. Now, shall the letter of the contract prevail, (which is insisted upon here, and which is a strong argument, I will admit), as against the real substance? A majority of the court is of the opinion that this case is not free from doubt, but we are all of the opinion, from the authorities, on the statement that has been made, and for the reason that the attempted alteration did not make this note negotiable, so that, in the hands of any party taking it, it would cut off equities, and did not broaden the contract, that it did not change the obligations of the parties, enforced as it was between the original parties; and if we stand by the letter, we disregard the spirit and effect of it, if we say the obligation between the parties was changed.

As to the charge of the court: "After the note has been executed, and before it is delivered to and accepted by the payee, any alteration

Building & Loan Co. v. Richter et al.

may be made in the note with the consent, express or implied, of the makers of the note."

We think that is good law as applied to the case. Again: "And any maker of the note consenting expressly or impliedly to such change would not be released from liability on the note by such alteration; but any material alteration made after the execution, but before delivery, would release all makers not assenting thereto.".

That is the law in Ohio.

"Now, an alteration in a note to invalidate it must be made by or at the instance or with the complicity of the owner or holder of the note." That is, some of the parties in interest, or all of the parties in interest, must know something about this.

The court says if it is made by a stranger it is a spoliation; and then says: "And the obligation as it was before such spoliation would be the obligation of the parties;" and one of the Ohio cases says that that is the way it would be enforced, and would be regarded as a spoliation, and not an alteration, making that distinction.

"Now, as to the character of the alteration that would invalidate a note: It is not every alteration in a note that would invalidate it, but the alteration must be a material alteration,—such an alteration as would change the effect of the note, and the rights or liabilities of the parties to the note." That ought to be the test.

"Any alteration or change that does not affect in any way the legal effect of the obligation, or the rights of the parties thereto, would not invalidate the note. The addition of words to a non-negotiable note that would make it negotiable might or might not be a material alteration."

The court means there what happened in this case, that it was enforced, between the original parties, and that it made no difference whatever, so far as this contract was concerned, whether it in form affected the rights of the parties or broadened the contract, because, as enforced, it had no such effect. We do not base it wholly upon that ground, but we say that this was not such a change as made it a negotiable note, and good in the hands of third parties to the note.

We think the judgment in this case should be and the same is affirmed.

*J. A. Floy & J. B. Jones*, for plaintiff in error.

*Kibler & Kibler*, for defendant in error.